**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-1348

HILDA ESTEL SANCHEZ-DIAZ,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued:  January 24, 2023                    Decided:  April 20, 2023

Before NIEMEYER and QUATTLEBAUM, Circuit Judges, and FLOYD, Senior Circuit Judge.

Remanded by unpublished per curiam opinion.

**ARGUED:**  Abdoul Aziz Konare, KONARE LAW, Frederick, Maryland, for Petitioner. Abigail Evelyn Leach, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Brian M. Boynton, Principal Deputy Assistant Attorney General, Anthony C. Payne, Assistant Director, Liza S. Murcia, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Petitioner Hilda Estela Sanchez-Diaz entered the United States via Hidalgo, Texas, in 2014. On June 11, 2015, the Department of Homeland Security commenced removal proceedings against her, charging her with removability as an immigrant who, at the time of application for admission, was not in possession of valid travel documents, in violation of the Immigration and Nationality Act (INA) § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I). In November 2016, Sanchez-Diaz, through her attorney, admitted to this charge and conceded removability before an immigration judge (IJ). She then applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). She submitted that, after she erased MS-13 gang graffiti from the outside wall of her home, gang members began extorting and threatening her. She asserted that the gang's threats and extortion were retribution for her perceived anti-gang political opinion. Additionally, she contended that she possessed a well-founded fear of future persecution based on her membership in a particular social group consisting of her mother's family members.

On March 18, 2019, the IJ found Sanchez-Diaz removable as charged and denied her application for asylum, withholding of removal, and CAT protection. It found that Sanchez-Diaz did not allege past persecution or a well-founded fear of future persecution on a protected ground. Rather, it explained, MS-13 only sought to extort money from her to enhance its financial status. As a result, the IJ concluded that she did not qualify for asylum or withholding of removal. It also denied CAT relief, explaining that the record did not demonstrate that she would more likely than not experience torture with the consent

2

or acquiescence of a Salvadoran official if she returned to El Salvador. Sanchez-Diaz appealed this decision, and on March 10, 2021, the BIA affirmed the IJ's decision and dismissed the appeal. Like the IJ, the BIA explained that Sanchez-Diaz did not demonstrate past persecution or a well-founded fear of future persecution on account of an anti-gang political opinion or family membership. Further, it agreed with the IJ that Sanchez-Diaz did not establish that she would more likely than not experience torture with the acquiescence of a Salvadoran government official. It added that Sanchez-Diaz never reported MS-13's threats to the Salvadoran police, and therefore, "[t]here [was] insufficient evidence [that] the authorities knew of or turned a blind eye to the gang's criminal activities perpetrated against [her]." A.R. 4.

Sanchez-Diaz timely sought this Court's review of the BIA and IJ's decisions. On August 10, 2021, the government moved to remand the case to the BIA. It did not concede error on the agency's part, instead arguing only that remand would provide the BIA an opportunity to better explain its findings. Sanchez-Diaz opposed the motion, contending that the Court should permit the parties to fully brief and argue the appeal. We subsequently denied the motion.

Now, Sanchez-Diaz asks us to reverse and remand the agency's final order of removal. She asserts that the BIA and IJ erred in denying her application for asylum, withholding of removal, and CAT relief, and she requests that we vacate these decisions and remand for further proceedings. For its part, the government—without confessing error—again asks that the Court remand the case to the BIA for more detailed analysis and explanation of its decision "in light of intervening precedent." Resp. Br. 21. First, it argues

that remand is warranted for the BIA to clarify and further explain its finding that Sanchez-Diaz did not demonstrate a well-founded fear of future harm on account of her family membership. Resp. Br. 22. It continues that remand would also enable the BIA to apply *Perez Vasquez v. Garland*, 4 F.4th 213 (4th Cir. 2021), and *Toledo-Vasquez v. Garland*, 27 F.4th 281 (4th Cir. 2022), which we published after the BIA's decision in this matter. Resp. Br. 22–26. Both cases help to clarify the nexus analysis for family-based persecution. Second, the government also asserts that the remand would permit the BIA to further analyze and explain its conclusion that Sanchez-Diaz did not demonstrate that MS-13 gang members threatened and extorted her on account of her actual or imputed anti-gang political opinion. Resp. Br. 27. Third, it asserts that remand would enable the BIA to further explain its denial of CAT relief on the ground that Sanchez-Diaz did not establish that she would more likely than not be tortured by or with the acquiescence of a Salvadoran government official if removed to El Salvador. Resp. Br. 31. In particular, it explains, remand would allow the BIA an opportunity to address this Court's intervening decision in *Portillo Flores v. Garland*, 3 F.4th 615 (4th Cir. 2021) (en banc). There, in relevant part, we rejected a *per se* requirement that a petitioner seek police assistance to be eligible for asylum. *Portillo Flores*, 3 F.4th at 636.

As a general matter, when the BIA errs, "the proper course . . . is to remand to the agency for additional investigation or explanation." *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (quotation omitted). And, although the government does not concede agency error, the proper course in this instance is to remand to allow the agency additional opportunity to analyze and clarify the issues. *See id.* at 16–17 ("Generally

4

speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands.  This principle has obvious importance in the immigration context."); *SKF USA Inc. v. United States*, 254 F.3d 1022, 1028–29 (Fed. Cir. 2001) (describing remand as "generally required" when an intervening event may affect the validity of an agency action and "usually appropriate" when an agency does not concede error but nevertheless has a "substantial and legitimate" concern).    After considering the parties' submissions and hearing oral argument in this matter, we remand to the BIA for further consideration and analysis of Sanchez-Diaz's asylum, withholding, and CAT claims.

*REMANDED*